## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

THINH RAPPA,

     Plaintiff,                        CASE NO.: 6:25-cv-00224

v.

CENTRAL FLORIDA TOURISM
OVERSIGHT DISTRICT,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, THINH RAPPA, (hereinafter "Plaintiff" or "Ms. Rappa"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, CENTRAL FLORIDA TOURISM OVERSIGHT DISTRICT (hereinafter "Defendant" or "The District"), and alleges:

## JURISDICTION AND VENUE

1.    This is an action for damages under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and the Florida Civil Rights Act ("FCRA") for discrimination based on race, national origin, gender and retaliation.

2.    This Court has jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. §§ 1331 and 1343.

1

3.     This Court has jurisdiction over Plaintiff's FCRA claims under 28 U.S.C. § 1367 as all claims arise out of the same nexus of operative facts.

4.      Venue is appropriate in the Middle District of Florida because the events giving rise to the cause of action occurred in Orange County, Florida, which is located in the Middle District of Florida.

## PARTIES

5.     Plaintiff, THINH RAPPA, is a resident of Volusia County, Florida, which is located in the Middle District of Florida.

6.     Defendant, CENTRAL FLORIDA TOURISM OVERSIGHT DISTRICT, has been organized and is in existence within Orange County, Florida.

7.     At all times material, Defendant, CENTRAL FLORIDA TOURISM OVERSIGHT DISTRICT, was an "employer" subject to the requirements of Title VII, the FCRA, and other applicable law.

## ADMINISTRATIVE PREREQUISITES

8.     Ms. Rappa has satisfied all prerequisites necessary to bring this cause of action. Plaintiff filed a charge jointly with the EEOC and the Florida Commission on Human Relations (FCHR).  On November 12, 2024, Plaintiff received a right to sue letter from the EEOC. Plaintiff filed this action before the expiration of any deadlines to file suit.

## GENERAL ALLEGATIONS

9.    Thinh Rappa is an Asian-American female who was born in Vietnam.

10.    On May 9, 2011, the District hired Ms. Rappa as a Firefighter EMT at Station 2A.

11.    In 2013, the District transferred Ms. Rappa to continue working as a Firefighter EMT at Station 3B, which was headed by Lieutenant Brian Gleeson (White male).

12.    As part of her job duties, Ms. Rappa was tasked with transporting patients to hospitals, rotating from fire trucks to rescue trucks, and assisting rescue trucks with their patients.

13.    Throughout the course of her employment, the District subjected Ms. Rappa to a hostile work environment based on her race, national origin, and gender, and retaliated against her when she complained about the same to HR.

14.    In and around 2021, Ms. Rappa and Paul Grasso (Firefighter Paramedic – White male) cooked dinner together at the station. When Ms. Rappa asked Mr. Grasso whether he needed help squeezing a lemon, Mr. Grasso said, "You're not strong enough to help, it's a man's job."

15.    Around the same time, Mr. Grasso approached Ms. Rappa in the station's kitchen while she was cooking and said, "Maybe you should speak English,

Thinh." He then slammed a ladle on the countertop and blurted out mockingly, "ying, yang, yong, ping, pang, pong."

16.    In and around December 2021, the District temporarily moved Ms. Rappa from Station 3B to Station 1B – headed by Lieutenant Eric Nicholson (White male) – to cover another Firefighter EMT's shift because that EMT had taken a medical leave.

17.    In and around January 2022, the District hired Tonya Reed (Black Female) to work at Station 1B.

18.    After Ms. Reed started at Station 1B, she often approached Ms. Rappa in private and said, "This is not your crew. You don't belong here." It was clear that Ms. Reed was referring to Ms. Rappa's race when she communicated this to Ms. Rappa.

19.    Ms. Rappa complained to Lieutenant Nicholson about Ms. Reed's racist comments. However, Ms. Rappa's complaint went unaddressed.

20.    During a subsequent morning meeting, Ms. Reed addressed the entire Station 1B crew and complained about how the crew mistreated her and threatened that she could go to HR about the entire crew. Ms. Rappa responded to this threat by pointing out to Ms. Reed that the crew could just as easily go to HR to raise legitimate complaints about her behavior.

21.    Ms. Reed then aggressively lunged from her chair and pointed a finger at Ms. Rappa, yelling, "You don't belong here, and I told you that before!" Although this incident occurred in front of Lieutenant Nicholson, he did nothing to address this occurrence.

22.    In and around January 2022, the District temporarily reassigned Mr. Grasso from Station 3B to Station 1B to cover the absence of a Firefighter Paramedic at Station 1B.

23.    Shortly after Mr. Grasso's temporary reassignment to Station 1B, Mark Morgan (Battalion Chief – White male) stated that the reason he wore flip flops at the station was so that his employees could hear him before he entered the room and to give them an opportunity to stop engaging in discriminatory behavior before he entered the room. This statement implied that Mr. Morgan did not want to catch acts of discrimination as they were occurring.

24.    On February 5, 2022, Lieutenant Nicholson partnered Ms. Rappa with Mr. Grasso in the same fire engine for the day.

25.    When Mr. Grasso discovered that Lieutenant Nicholson had partnered him up with Ms. Rappa for the day, he approached Ms. Rappa and said, "Not only do I not have another paramedic as a partner, but I also have you? So, I'm double screwed."

26. On February 5, 2022, at approximately 7:00 a.m., Mr. Grasso and Ms. Rappa were dispatched to a hotel because a father had notified the hotel that his son was extremely sick and had been coughing all night.

27. Mr. Grasso and Ms. Rappa arrived at the scene and found the child lying in bed. The child's father described the child's cough as a barking cough and told them that the child had trouble breathing.

28. Based on the father's description of his son's symptoms, Ms. Rappa concluded that the child's cough was consistent with a diagnosis of Croup – a common infection caused by swelling in a child's airway in his neck.

29. Despite knowing about the nature of the incident before arriving on the scene, Mr. Grasso chose not to bring the airway bag with him from the fire engine to help the child with his breathing difficulties.

30. Instead, Mr. Grasso informed the father that his son was fine and that nothing further could be done to assist his son. Mr. Grasso also insisted that the father sign a Refusal Form, indicating that the father wishes to decline medical treatment on behalf of his son.

31. Mr. Grasso and Ms. Rappa then left the hotel room and entered an elevator to return to their fire engine.

32. In the elevator, Mr. Grasso bragged to Ms. Rappa stating, "See I got us out of there early and we get to go home now." In response, Ms. Rappa told Mr.

Grasso that it was abundantly clear that the child was suffering from Croup and that Mr. Grasso behaved unprofessionally because he should have brought the airbag with him to better assist the child.

33.    In response, Mr. Grasso acted extremely defensively and shoved an ambulatory stretcher into Ms. Rappa so as to pin her between the stretcher and the wall, and yelled, "I am the medic here not you!" Ms. Rappa was frightened for her life and attempted to deescalate the situation, responding, "I'm so sorry and you're right. You do what you need to do."

34.    On the way back to the station, Mr. Grasso continued to harass and berate Ms. Rappa on the theme that she was incompetent because of her gender. Specifically, Mr. Grasso yelled, "It's because you're a woman. You don't know anything." Mr. Grasso also stated, "You are just an EMT and I am the medic. Who are you to question my authority?" Mr. Grasso's abusive treatment of Ms. Rappa brought her to tears and made her feel intimidated and threatened.

35.    Ms. Rappa then complained to Battalion Chief Scott Underwood that Mr. Grasso had harassed her and discriminated against her based on her gender. In response, Battalion Chief Underwood directed Ms. Rappa to make her complaint with HR and her Union Representative.

36.    On the same day, Ms. Rappa complained about race and gender discrimination and harassment to Michelle Dicus (Director of HR) and Paulette Montero (her Union Representative) about Mr. Grasso.

37.    On March 9, 2022, the District recommended that Mr. Grasso and Ms. Rappa be separated from each other.

38.    Shortly thereafter, the District reassigned Mr. Grasso to Station 3B and chose to permanently reassign Ms. Rappa away from her preferred station, Station 3B, to Station 1B, the least popular station among the firefighters, pushing her to resign from her position.

39.    During her time at Station 1B, Fire Chiefs intensely scrutinized and micromanaged Ms. Rappa's work.

40.    Station 1B also had a reputation for being the busiest station in the District and was commonly referred to as the "Punishment Station" where problematic individuals were sent as a punishment. Consequently, Ms. Rappa was extremely busy with little to no downtime. Ms. Rappa was also frequently exposed to traumatic events related to increased work calls.

41.    Around the same time, the District removed Ms. Rappa from the Peer Support Team without explanation. Ms. Rappa's removal from this team reduced her overtime hours worked causing her to earn less money.

42.    On May 10, 2022, Ms. Rappa requested FMLA leave because she suffered from Post Traumatic Stress Disorder related to Mr. Grasso's hostile actions toward her on February 5, 2022, and her increased exposure to traumatic events at work.

43.    In and around May 15, 2022, the District placed Ms. Rappa on paid long-term disability leave for a period of one year.

44.    During her medical leave, Ms. Rappa consistently followed up with HR regarding the status of her complaint. Each time, Ms. Dicus told Ms. Rappa that they were working on it and that Ms. Rappa should hear back shortly.

45.    After HR allegedly investigated Ms. Rappa's complaint, HR issued her a statement stating that her claims of harassment and discrimination had no merit. However, HR's statement had listed another employee's name at the top instead of Ms. Rappa's, suggesting that the statement had been copied from another employee's report of discrimination against Mr. Grasso.

46.    On October 4, 2022, Ms. Rappa filed a charge with the EEOC alleging discrimination based on her gender, race, national origin, and retaliation for her engagement in protected activity.

47.    In and around January 2023, Ms. Rappa returned to work from medical leave and is presently working at the District.

48.    Ms. Rappa has incurred costs and attorney's fees in bringing this action.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964
### Discrimination Resulting in a Hostile Work Environment
### On the Basis of Gender

49.     Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

50.     Ms. Rappa is protected from discrimination on the basis of her gender.

51.     At all material times, Ms. Rappa was an employee, and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

52.     Ms. Rappa was qualified for the position she held with the Defendant.

53.     Ms. Rappa's coworkers targeted and harassed her based on her gender.

54.     Specifically, Mr. Grasso shoved an ambulatory stretcher into Ms. Rappa to pin her between the stretcher and the elevator wall, and yelled, "I am the medic here not you," causing Ms. Rappa to fear for her life. Mr. Grasso also continuously harassed and berated Ms. Rappa and painted her as incompetent because she is a female. Mr. Grasso's incessant pestering and berating of Ms. Rappa intimidated and humiliated her and caused her to cry at work.

55.     The discriminatory conduct described herein was severe and pervasive and subjected Ms. Rappa to a work environment that was intimidating, hostile, and

offensive. This hostile work environment detrimentally interfered with Ms. Rappa's ability to perform her job duties.

56.    Defendant's actions in subjecting Ms. Rappa to hostile work environment were reckless, willful, and malicious.

57.    Defendant failed to take adequate remedial measures in response to Ms. Rappa's reports of sex discrimination.

58.    Defendant's actions, as set forth above, constitute intentional discrimination on the basis of Plaintiff's sex in violation of Section 703 of Title VII, 42 U.S.C. §2000e-2.

59.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.      Prejudgment interest;

E.      Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.      Attorney's fees and costs; and

G.      For such other relief as the Court deems just and equitable.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964**
**Discrimination Resulting in Adverse Employment Action**
**On the Basis of Gender**

60.     Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

61.     Ms. Rappa is a woman and as such, is protected from discrimination on the basis of her gender.

62.     At all material times, Ms. Rappa was an employee, and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

63.     Ms. Rappa was qualified for the position she held with the Defendant.

64.     Defendant subjected Ms. Rappa to adverse employment action based on her gender.

65.     In March 2022, Defendant permanently reassigned Ms. Rappa to Station 1B, in which she was extremely busy and constantly exposed to work-related

12

traumatic events because of her gender. By contrast, Defendant reassigned Mr. Grasso to his preferred station because he is a male.

66.    Around the same time, Defendant removed Ms. Rappa from the Peer Support Team causing her to earn significantly less money because of her gender.

67.    On May 15, 2022, Defendant placed Ms. Rappa on a medical leave and precluded her from earning overtime pay because of she is a female.

68.    Defendant's actions in reassigning Ms. Rappa to a busier and more scrutinized station, removing her from the Peer Support Team, and putting her in a position to need medical leave because of her gender were reckless, willful, and malicious.

69.    Defendant's actions, as set forth above, constitute intentional discrimination on the basis of Plaintiff's sex in violation of Section 703 of Title VII, 42 U.S.C. §2000e-2.

70.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

13

A.     Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.     Back pay;

C.     Compensatory damages against Defendant;

D.     Prejudgment interest;

E.     Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.     Attorney's fees and costs; and

G.     For such other relief as the Court deems just and equitable.

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964
### Retaliation for Engaging in Protected Activity
### Resulting in Adverse Employment Action

71.     Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

72.     Plaintiff is a member of a protected class under Title VII.

73.     Plaintiff engaged in protected activity under Title VII when she complained to HR that she was discriminated against based on her gender.

74.     Defendant failed to conduct an adequate investigation regarding Ms. Rappa's complaints.

75.     Instead, Defendant retaliated against Plaintiff for engaging in a protected activity under Title VII by reassigning her to a busier and more scrutinized

14

station, removing her from the Peer Support Team, and putting her in a position to need medical leave after she complained about gender discrimination.

76.    As a direct, proximate and foreseeable result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are permanent and continuing.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

<u>COUNT IV</u>
**Violation of the FCRA**

**Discrimination Resulting in a Hostile Work Environment**
**On the Basis of Gender**

77.     Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

78.     Ms. Rappa is a woman and as such, is protected from discrimination on the basis of her gender.

79.     At all material times, Ms. Rappa was an employee, and the Defendant was her employer covered by and within the meaning of the Florida Civil Rights Act of 1992 ("FCRA").

80.     Ms. Rappa was qualified for the position she held with the Defendant.

81.     Ms. Rappa's coworkers targeted and harassed her based on her gender.

82.     Specifically, Mr. Grasso shoved an ambulatory stretcher into Ms. Rappa to pin her between the stretcher and the elevator wall, and yelled, "I am the medic here not you," causing Ms. Rappa to fear for her life. Mr. Grasso also continuously harassed and berated Ms. Rappa and painted her as incompetent because she is a female. Mr. Grasso's incessant pestering and berating of Ms. Rappa intimidated and humiliated her and caused her to cry at work.

83.     The discriminatory conduct described herein was severe and pervasive and subjected Ms. Rappa to a work environment that was intimidating, hostile, and offensive. This hostile work environment detrimentally interfered with Ms. Rappa's ability to perform her job duties.

84.    Defendant's actions in subjecting Ms. Rappa to hostile work environment were reckless, willful, and malicious.

85.    Defendant failed to take adequate remedial measures in response to Ms. Rappa's reports of sex discrimination.

86.    By virtue of the actions described herein, Defendant has violated the FCRA.

87.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.     Attorney's fees and costs; and

G.     For such other relief as the Court deems just and equitable.

**COUNT V**
**Violation of the FCRA**
**Discrimination Resulting in Adverse Employment Action**
**On the Basis of Gender**

88.    Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

89.    Ms. Rappa is a woman and as such, is protected from discrimination on the basis of her gender.

90.    At all material times, Ms. Rappa was an employee, and the Defendant was her employer covered by and within the meaning of the Florida Civil Rights Act of 1992 ("FCRA").

91.    Ms. Rappa was qualified for the position she held with the Defendant.

92.    Defendant subjected Ms. Rappa to adverse employment action based on her gender.

93.    In March 2022, Defendant permanently reassigned Ms. Rappa to Station 1B, in which she was extremely busy and constantly exposed to work-related traumatic events because of her gender. By contrast, Defendant reassigned Mr. Grasso to his preferred station because he is a male.

94.    Around the same time, Defendant removed Ms. Rappa from the Peer Support Team causing her to earn significantly less money because of her gender.

18

95.     On May 15, 2022, Defendant placed Ms. Rappa on a medical leave and precluded her from earning overtime pay because of she is a female.

96.     Defendant's actions in reassigning Ms. Rappa, removing her from the Peer Support Team, and putting her in a position to need medical leave because of her gender were reckless, willful, and malicious.

97.     By virtue of the actions described herein, Defendant has violated the FCRA.

98.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.     Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.     Back pay;

C.     Compensatory damages against Defendant;

D.     Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

### COUNT VI
**Violation of the FCRA**
**Retaliation for Engaging in Protected Activity**
**Resulting in Adverse Employment Action**

99.    Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

100.    Plaintiff is a member of a protected class under the FCRA.

101.    Plaintiff engaged in protected activity under Title VII when she complained to HR that she was discriminated against based on her gender.

102.    Defendant failed to conduct an adequate investigation regarding Ms. Rappa's complaints.

103.    Instead, Defendant retaliated against Plaintiff for engaging in a protected activity under Title VII by reassigning her to a busier station, removing her from the Peer Support Team, and putting her in a position to need medical leave after she complained about gender discrimination.

104.    As a direct, proximate and foreseeable result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment,

mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are permanent and continuing.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

<u>COUNT VII</u>
**Violation of Title VII
For Discrimination Resulting in
A Hostile Work Environment on the Basis of
Race and National Origin**

105.    Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

106.    Defendant is an "employer" within the meaning of Title VII.

107.    Ms. Rappa is an "employee" of Defendant within the meaning of Title VII.

108.    Ms. Rappa is a member of a protected class because of her race and national origin, and therefore, is protected by Title VII.

109.    Ms. Rappa is qualified to perform her job duties.

110.    Ms. Rappa's non-Asian peers targeted and harassed her because of her race and national origin.

111.    Specifically, Mr. Grasso (White male) randomly approached Ms. Rappa in the station's kitchen and said, "Maybe you should speak English, Thinh," and proceeded to slam a ladle onto the counter while repeatedly yelling words that he deemed to sound like Vietnamese words, such as "ying," "yang," and "pong," in front of her peers in an attempt to embarrass and humiliate her. During a separate occasion, Ms. Reed (Black female) ran across the room to Ms. Rappa, pointed a finger at Ms. Rappa, and yelled, "You don't belong here and I told you that before!" Ms. Reed did this during a morning meeting in front of Ms. Rappa's coworkers.

112.    The discriminatory statements and conduct stated herein were so severe and pervasive it caused Ms. Rappa to perceive her work environment as intimidating, hostile, and offensive, which detrimentally interfered with Ms. Rappa's ability to perform her job duties.

113.    Defendant's actions in subjecting Ms. Rappa to a hostile work environment because of her race and national origin were reckless, willful, and malicious.

114.    As a direct and proximate result of Defendant's acts, Ms. Rappa has suffered loss of employment compensation and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to her professional reputation. Ms. Rappa has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

**COUNT VIII**
**Violation of Title VII**
**For Discrimination Resulting in**
**Adverse Employment Action on the Basis of**
**Race and National Origin**

115. Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

116. Defendant is an "employer" within the meaning of Title VII.

117. Ms. Rappa is an "employee" of Defendant within the meaning of Title VII.

118. Ms. Rappa is a member of a protected class because of her race and national origin, and therefore, is protected by Title VII.

119. Ms. Rappa is qualified to perform her job duties.

120. Defendant subjected Ms. Rappa to adverse employment action because of her race and national origin.

121. In March 2022, Defendant permanently reassigned Ms. Rappa to Station 1B, in which she was extremely busy and constantly exposed to work-related traumatic events because of her race and national origin. By contrast, Defendant reassigned Mr. Grasso to his preferred station because he is White.

122. Around the same time, Defendant removed Ms. Rappa from the Peer Support Team causing her to earn significantly less money because of her race and national origin.

24

123.   On May 15, 2022, Defendant placed Ms. Rappa on a medical leave and precluded her from earning overtime pay because of she is Asian American.

124.   Defendant's actions in reassigning Ms. Rappa, removing her from the Peer Support Team, and putting her in a position to need medical leave because of her race and national origin were reckless, willful, and malicious.

125.   As a direct and proximate result of Defendant's acts, Ms. Rappa has suffered loss of employment compensation due to her medical leave and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to her professional reputation. Ms. Rappa has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.   Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.   Back pay;

C.   Compensatory damages against Defendant;

D.   Prejudgment interest;

E.   Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.   Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

**COUNT IX**
**Violation of Title VII**
**Retaliation for Engaging in Protected Activity**
**Resulting in a Hostile Work Environment**

126.    Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

127.    Ms. Rappa is a member of a protected class and protected by Title VII from discrimination based on her race and national origin.

128.    Ms. Rappa engaged in protected activity when she complained about Ms. Reed's discriminatory statements based on her race and national origin to Lieutenant Nicholson.

129.    After Ms. Rappa engaged in this protected activity, Ms. Reed ran across the room to Ms. Rappa, pointed a finger at Ms. Rappa, and yelled, "You don't belong here and I told you that before," in front of Ms. Rappa's coworkers in an attempt to humiliate, intimidate, and embarrass Ms. Rappa.

130.    The retaliatory statements and conduct stated herein were so severe and pervasive it caused Ms. Rappa to perceive her work environment as intimidating, hostile, and offensive, which detrimentally interfered with Ms. Rappa's ability to perform her job duties.

131.    The actions of the Defendant constitute a violation of Title VII in that the Defendant has retaliated against Ms. Rappa for her complaint of discrimination based on race and national origin.

132.    Ms. Rappa's protected activity was a but-for cause of her hostile work environment, and resulting injury.

133.    Defendant acted with intent, malice and reckless disregard for Ms. Rappa's protected rights when it subjected her to a hostile work environment because of her complaint of discrimination based on race and national origin.

134.    As a direct and proximate result of Defendant's acts, Ms. Rappa has suffered loss of employment compensation and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to her professional reputation. Ms. Rappa has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court as provided in Title VII and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.      Attorney's fees and costs;

F.      Damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant; and

G.      For such other relief as the Court deems just and equitable.

**COUNT X**
**Violation of Title VII**
**Retaliation for Engaging in Protected Activity**
**Resulting in Adverse Employment Action**

135.   Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

136.   Ms. Rappa is a member of a protected class and protected by Title VII from discrimination based on her race and national origin.

137.   In and around January 2022, Ms. Rappa engaged in protected activity when she complained about Ms. Reed's discriminatory statements based on her race and national origin to Lieutenant Nicholson.

138.   Defendant retaliated against Plaintiff for engaging in a protected activity under Title VII by reassigning her to a busier station, removing her from the Peer Support Team, and putting her in a position to need medical leave after she complained about discrimination based on her race and national origin.

139.   The actions of the Defendant constitute a violation of Title VII in that the Defendant has retaliated against Ms. Rappa for her complaints to HR that she was subjected to discrimination based on her race and national origin.

140.   Ms. Rappa's protected activity was a but-for cause of her medical leave, and resulting injury.

141.   Defendant acted with intent, malice and reckless disregard for Ms. Rappa's protected rights when it reassigned her to a busier station, removed her from the Peer Support Team, and placed her on medical leave because of her report of race and national origin-based discrimination.

142.   As a direct and proximate result of Defendant's acts, Ms. Rappa has suffered loss of employment compensation due to her medical leave and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to her professional reputation. Ms. Rappa has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court as provided in Title VII and prays for a judgment:

A.   Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.   Back pay;

C.   Compensatory damages against Defendant;

D.   Prejudgment interest;

E.   Attorney's fees and costs;

F.     Damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant; and

G.     For such other relief as the Court deems just and equitable.

**COUNT XI**
**Violation of the FCRA**
**For Discrimination Resulting in**
**A Hostile Work Environment on the Basis of**
**Race and National Origin**

143.   Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

144.   The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et seq. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's race and national origin.

145.   Ms. Rappa has satisfied all procedural and administrative requirements set forth in the FCRA.

146.   Ms. Rappa is a member of a protected class because of her race and national origin, and therefore, is protected by the FCRA.

147.   Ms. Rappa is qualified to perform her job duties.

148.   Ms. Rappa's non-Asian peers targeted and harassed her because of her race and national origin.

149.    Specifically, Mr. Grasso (White male) randomly approached Ms. Rappa in the station's kitchen and said, "Maybe you should speak English, Thinh," and proceeded to slam a ladle onto the counter while repeatedly yelling words that he deemed to sound like Vietnamese words, such as "ying," "yang," and "pong," in front of her peers in an attempt to embarrass and humiliate her. During a separate occasion, Ms. Reed (Black female) ran across the room to Ms. Rappa, pointed a finger at Ms. Rappa, and yelled, "You don't belong here and I told you that before!" Ms. Reed did this during a morning meeting in front of Ms. Rappa's coworkers.

150.    The discriminatory statements and conduct stated herein were so severe and pervasive it caused Ms. Rappa to perceive her work environment as intimidating, hostile, and offensive, which detrimentally interfered with Ms. Rappa's ability to perform her job duties.

151.    Defendant's actions in subjecting Ms. Rappa to a hostile work environment because of her race and national origin were reckless, willful, and malicious.

152.    As a direct and proximate result of Defendant's acts, Ms. Rappa has suffered loss of employment compensation and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to her professional reputation. Ms. Rappa has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

**COUNT XII**
**Violation of the FCRA**
**For Discrimination Resulting in**
**Adverse Employment Action on the Basis of**
**Race and National Origin**

153.    Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

154.    Defendant is an "employer" within the meaning of the FCRA.

155.    Ms. Rappa is an "employee" of Defendant within the meaning of the FCRA.

156.   Ms. Rappa is a member of a protected class because of her race and national origin, and therefore, is protected by the FCRA.

157.   Ms. Rappa is qualified to perform her job duties.

158.   Defendant subjected Ms. Rappa to adverse employment action because of her race and national origin.

159.   In March 2022, Defendant permanently reassigned Ms. Rappa to Station 1B, in which she was extremely busy and constantly exposed to work-related traumatic events because of her race and national origin. By contrast, Defendant reassigned Mr. Grasso to his preferred station because he is White.

160.   Around the same time, Defendant removed Ms. Rappa from the Peer Support Team causing her to earn significantly less money because of her race and national origin.

161.   On May 15, 2022, Defendant placed Ms. Rappa on a medical leave and precluded her from earning overtime pay because of she is a Asian American.

162.   Defendant's actions in reassigning Ms. Rappa, removing her from the Peer Support Team, and putting her in a position to need medical leave because of her race and national origin were reckless, willful, and malicious.

163.   As a direct and proximate result of Defendant's acts, Ms. Rappa has suffered loss of employment compensation due to her medical leave and has suffered and continues to suffer mental and emotional distress, humiliation, expense,

embarrassment, and damage to her professional reputation. Ms. Rappa has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

### COUNT XIII
**Violation of the FCRA**
**Retaliation for Engaging in Protected Activity**
**Resulting in a Hostile Work Environment**

164.    Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

165.    The Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et al*. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or

34

privileges of employment based on that person's engagement in a protected activity.

166.   Ms. Rappa is a member of a protected class and protected by the FCRA from discrimination based on her race and national origin.

167.   Ms. Rappa engaged in protected activity when she complained about Ms. Reed's discriminatory statements based on her race and national origin to Lieutenant Nicholson.

168.   After Ms. Rappa engaged in this protected activity, Ms. Reed ran across the room to Ms. Rappa, pointed a finger at Ms. Rappa, and yelled, "You don't belong here and I told you that before," in front of Ms. Rappa's coworkers in an attempt to humiliate, intimidate, and embarrass Ms. Rappa.

169.   The retaliatory statements and conduct stated herein were so severe and pervasive it caused Ms. Rappa to perceive her work environment as intimidating, hostile, and offensive, which detrimentally interfered with Ms. Rappa's ability to perform her job duties.

170.   The actions of the Defendant constitute a violation of Title VII in that the Defendant has retaliated against Ms. Rappa for her complaint of discrimination based on race and national origin.

171.   Ms. Rappa's protected activity was a but-for cause of her hostile work environment, and resulting injury.

172.    Defendant acted with intent, malice and reckless disregard for Ms. Rappa's protected rights when it subjected her to a hostile work environment because of her complaint of discrimination based on race and national origin.

173.    As a direct and proximate result of Defendant's acts, Ms. Rappa has suffered loss of employment compensation and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to her professional reputation. Ms. Rappa has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court as provided in the FCRA and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Attorney's fees and costs;

F.    Damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant; and

G.    For such other relief as the Court deems just and equitable.

## COUNT XIV
### Violation of the FCRA
### Retaliation for Engaging in Protected Activity
### Resulting in Adverse Employment Action

174.   Plaintiff, THINH RAPPA, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-eight (48) as if set forth herein in full.

175.   Ms. Rappa is a member of a protected class and protected by the FCRA from discrimination based on her race and national origin.

176.   In and around January 2022, Ms. Rappa engaged in protected activity when she complained about Ms. Reed's discriminatory statements based on her race and national origin to Lieutenant Nicholson.

177.   Defendant retaliated against Plaintiff for engaging in a protected activity under Title VII by reassigning her to a busier station, removing her from the Peer Support Team, and putting her in a position to need medical leave after she complained about discrimination based on her race and national origin.

178.   The actions of the Defendant constitute a violation of Title VII in that the Defendant has retaliated against Ms. Rappa for her complaint to HR that she was subjected to discrimination based on her race and national origin.

179.   Ms. Rappa's protected activity was a but-for cause of her medical leave, and resulting injury.

180.   Defendant acted with intent, malice and reckless disregard for Ms. Rappa's protected rights when it placed her on a medical leave because of her report of race and national origin-based discrimination.

181.   As a direct and proximate result of Defendant's acts, Ms. Rappa has suffered loss of employment compensation due to her medical leave and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to her professional reputation. Ms. Rappa has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Rappa respectfully invokes the remedial powers of this Court as provided in the FCRA and prays for a judgment:

A.   Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Rappa;

B.   Back pay;

C.   Compensatory damages against Defendant;

D.   Prejudgment interest;

E.   Attorney's fees and costs;

F.   Damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant; and

G.   For such other relief as the Court deems just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Dated this 10th day of February, 2025.

/s/ Gary L Printy, Jr, Esq
**Gary L. Printy, Jr**
Florida Bar No. 41956
The Printy Law Firm
5407 N. Florida Ave
Tampa, Florida 33604
Telephone (813) 434-0649
FAX (813) 423-6543
garyjr@printylawfirm.com
e-service@printylawfirm.com
*Lead Counsel for Plaintiff*
THINH RAPPA